FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 28, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BARBARA B.,

               Plaintiff,

  v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.

NO:  1:19-CV-03238-FVS

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 10, 11.  This matter was submitted for consideration without

oral argument.  Plaintiff is represented by Attorney D. James Tree.  Defendant is

represented by Special Assistant United States Attorney Jeffrey E. Staples.  The

Court has reviewed the administrative record, the parties' completed briefing, and

is fully informed.  For the reasons discussed below, the Court **GRANTS**

Defendant's Motion for Summary Judgment, ECF No. 11, and **DENIES** Plaintiff's

Motion for Summary Judgment, ECF No. 10.

ORDER ~ 1

**JURISDICTION**

Plaintiff Barbara B.[1] filed for Supplemental Security Income (SSI) on February 9, 2016, Tr. 102, alleging an onset date of November 14, 2014, Tr. 205, due to an unknown stomach problem, herniated disc in the lumbar spine with myelopathy, bipolar disorder, anxiety, stenosis of lumbar spine, asthma, left wrist/hand numbness/pain, and left knee pain, Tr. 247.[2]  Benefits were denied initially, Tr. 126-29, and upon reconsideration, Tr. 133-35.  A hearing before administrative law judge Marie Palachuk ("ALJ") was conducted on June 20, 2018.  Tr. 34-70.  Plaintiff was represented by counsel and testified at the hearing. *Id*.  The ALJ also took the testimony of medical expert Haddon Alexander III, M.D., psychological expert Marian Martin, Ph.D. and vocational expert Diane

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

[2]Plaintiff had a previous application for SSI benefits filed on March 3, 2014.  Tr. 82.  The application was denied initially on January 16, 2015, Tr. 120-23, and at reconsideration on June 1, 2015, Tr. 86.  On September 17, 2015, Plaintiff filed a written request for a hearing.  Tr. 86.  On January 25, 2016, ALJ Larry Kennedy found her request for a hearing was untimely, dismissed the request, and found that the June 1, 2015 denial remained in effect.  Tr. 87.

ORDER ~ 2

Kramer. *Id*. Plaintiff requested that her prior application be reopened. *Id*. The ALJ denied benefits on August 29, 2018. Tr. 15-28. The Appeals Council denied review on May 8, 2019. Tr. 1-5. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 26 years old at the alleged onset date. Tr. 205. The highest grade she completed was the eighth grade in 2002. Tr. 248. Plaintiff has worked as crowd management in security. Tr. 248. At application, she stated that she stopped working on February 28, 2008 due to her conditions. Tr. 247.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

1  substantial gainful work which exists in the national economy."  42 U.S.C. §

2  423(d)(2)(A).

3      The Commissioner has established a five-step sequential analysis to

4  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

5  416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

6  activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

7  gainful activity," the Commissioner must find that the claimant is not disabled.  20

8  C.F.R. § 416.920(b).

9      If the claimant is not engaged in substantial gainful activity, the analysis

10  proceeds to step two.  At this step, the Commissioner considers the severity of the

11  claimant's impairment.  20 C.F.R. § 416,920(a)(4)(ii).  If the claimant suffers from

12  "any impairment or combination of impairments which significantly limits [his or

13  her] physical or mental ability to do basic work activities," the analysis proceeds to

14  step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

15  this severity threshold, however, the Commissioner must find that the claimant is

16  not disabled.  20 C.F.R. § 416.920(c).

17      At step three, the Commissioner compares the claimant's impairment to

18  severe impairments recognized by the Commissioner to be so severe as to preclude

19  a person from engaging in substantial gainful activity.  20 C.F.R. §

20  416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

21  enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

The ALJ denied Plaintiff's motion to reopen her prior application.  Tr. 15.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 9, 2016, the application date.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments: osteoarthritis of the lumbar spine; asthma; gastrointestinal pain with no objective findings to support a diagnosis other than epigastric cannabis hyperemesis; cholecystitits; depressive disorder; panic disorder; somatic symptom disorder; borderline personality disorder; and cannabis us disorder, daily and ongoing.  Tr. 17-18.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equaled the severity of a listed impairment through the date last insured.  Tr. 19.  The ALJ then found that Plaintiff had the RFC to perform light work as defined in 20 CFR § 416937(b) except:

she can never climb ladders, ropes, or scaffolds; she can frequently climb ramps and stairs; she can frequently balance, stoop, kneel, crouch, and crawl; she must avoid concentrated exposure to extreme temperatures, humidity, vibrations, respiratory irritants, and all exposure to hazards; she is able to understand, remember, and carry out simple, repetitive, and routine tasks and instructions; she is able to maintain attention and concentration on simple, repetitive tasks for two-hour intervals between regularly scheduled breaks; she must work in a predictable work environment with seldom changes; she cannot perform face-paced [sic] production rate of pace; she can have simple judgment and decision making; [s]he cannot work with the public; she can have superficial interaction (vicinity of coworkers is acceptable but no collaborative interaction) with coworkers; she can have no-over-the-shoulder supervision; any job should be dealing with things rather than people.

Tr. 21.  At step four, the ALJ found that Plaintiff has no past relevant work.  Tr. 27.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: office cleaner I, small parts assembler, and mail clerk.  Tr. 28.  On that basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from February 9, 2016, the date of application, through the date of her decision.  Tr. 28.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her SSI under Title XVI of the Social Security Act.  ECF No. 10.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom statements; and

2. Whether the ALJ properly considered the medical opinion evidence.

## DISCUSSION

ORDER ~ 8

### 1.    Plaintiff's Symptom Statements

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).  "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Id*. (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

ORDER ~ 9

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 21-22. Plaintiff provided five reasons in support of her determination: (1) Plaintiff's allegations are inconsistent with the lack of treatment; (2) Plaintiff failed to consistently follow treatment recommendations and prescriptions; (3) Plaintiff had an entitlement mentality; (4) Plaintiff had a weak work history; and (5) Plaintiff's statements were not consistent with the medical evidence.

The ALJ's first reason for rejecting Plaintiff's symptom statements, that her allegations are inconsistent with the lack of treatment, is not specific, clear and convincing because the ALJ failed to consider evidence prior to Plaintiff's application date. Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. § 416.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

First, the ALJ found that Plaintiff "has only infrequently sought treatment, with the majority of her treatment being before the adjudicative period in 2015."

Tr. 22.  The evidence predating the application date should not be excluded from consideration in this case.  To be eligible for SSI, a claimant must meet seven requirements under 20 C.F.R. § 416.202.  A claimant must (1) be aged 65 or older, blind, or disabled, (2) be a resident of the United States, (3) not exceed the income limit, (4) not exceed the resource limit, (5) not have a drug or alcohol addiction that is material to the disability, (6) not be a fleeing felon, and (7) file an application.  20 C.F.R. § 416.202.  Based on the requirement that a claimant file an application to be eligible for benefits, 20 C.F.R. § 416.202(g), ALJs have a practice of evaluating a claimant's SSI application as if the disability onset date is the date of application.  *See* HALLEX I-2-6-58 (requiring ALJs to admit "[e]vidence dated on or after the application date or protective filing date of a title XVI application claiming disability").  However, this is inconsistent with the Regulations, which requires the evidence in the case record to be complete:

> Complete medical history means the records of your medical source(s) covering at least the 12 months preceding the month in which you file your application.  If you say that your disability began less than 12 months before you filed your application, we will develop your complete medical history beginning with the month you say your disability began unless we have reason to believe your disability began earlier.

20 C.F.R. § 416.912(b)(ii).  A claimant does not file an application on or before the day she becomes unable to work.  Instead, she becomes unable to work, and then files an application.  *See Peter S. v. Comm'r of Soc. Sec.*, Case No. 4:17-cv-05173-JTR, 2019 WL 1567894 (E.D. Wash. Feb. 26, 2019) ("Logic dictates that a person

develops a medical impairment and then files an application for benefits, and not that a person files an application for benefits then develops a medical impairment."); *Rosalinda M. v. Saul*, Case No. 1:18-cv-03077-JTR, ECF No. 17 at 2 (E.D. Wash. April 2, 2019); *Joseph H. v. Saul*, Case No. 1:19-cv-00137-JTR, 2020 WL 1557297 (E.D. Wash. April 1, 2020).  Furthermore, 20 C.F.R. § 416.202 makes being disabled and filing an application two separate requirements that must be met to be eligible for benefits.  A claimant can conceivably meet the disability requirement, but not meet all other six requirements under 20 C.F.R. § 416.202.

Social Security's internal policy manual, the Program Operations Manual System (POMS) defines the protective filing date as the earliest possible Established Onset Date (EOD) for SSI claims, but acknowledges that the adjudicator may need to consider medical evidence prior to the application to determine severity and duration of a claimant's impairments.  POMS DI 25501.370.  Social Security Ruling 18-1p states that "[b]ecause entitlement and eligibility depend on non-medical requirements, the EOD  may be later than the date the claimant first met the definition of disability, and some claimants who meet the definition of disability may not be entitled to benefits under title II or eligible for disability payments under title XVI."  Therefore, limiting the review of the evidence to the date of application and forward, thereby ignoring the claimant's alleged onset date of disability, is inconsistent with the Regulations and internal agency policy.

Plaintiff has alleged two onset dates in the record.  In her first application, she alleged an onset date of August 1, 2009.  Tr. 71.  In the second application, Plaintiff alleged an onset of November 14, 2014.  Tr. 205.  At the hearing, Plaintiff requested that her prior application be reopened, Tr. 38-39, and the ALJ denied this request, Tr. 15.  The ALJ's refusal to reopen Plaintiff's prior application is not reviewable by this Court.  *Lester*, 81 F.3d at 827.  Therefore, the onset date that dictates what evidence is considered is November 14, 2014.  The ALJ erred in her conclusion that the majority of the treatment accruing prior to the application date demonstrates that Plaintiff's statements were unreliable.

However, any error resulting from the ALJ's failure to consider evidence from the alleged date of onset and forward is harmless, because she has provided other legally sufficient reasons for rejecting Plaintiff's symptom statements.  *See Carmickle v. Comm'r, Soc. Sec.,* 533 F.3d 1155, 1163 (9th Cir. 2008) (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

The ALJ's second reason for rejecting Plaintiff's symptom statements, that she failed to consistently follow treatment recommendations and prescriptions, is

1  specific, clear and convincing.  Failure to follow a course of treatment may be

2  excused, however, if the claimant's noncompliance is attributable to her mental

3  illness or if the claimant cannot afford the treatment.  *Regennitter v. Comm'r of*

4  *Soc. Sec.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999); *Gamble v. Chater*, 68 F.3d

5  319, 321 (9th Cir. 1995).

6      The ALJ addressed Plaintiff's physical and psychological treatment

7  separately.  First, the ALJ found that Plaintiff failed to follow the treatment

8  recommendations and prescriptions in regards to her physical impairments.  Tr. 22.

9  On December 23, 2015, Sarah McVay, Psy.D. stated that Plaintiff "has a history of

10  medication non-adherence and has never been consistently treated for bipolar

11  disorder.  Notes reveal [patient] frequently stopped taking psych meds, which led

12  to increase in anxiety and irritability."  Tr. 396.  She further stated that Plaintiff

13  had "bipolar disorder with physical limitations that are being exacerbated by poor

14  treatment adherence, lack of insight, and poor distress tolerance skills."  Tr. 397.

15  On September 15, 2016 Plaintiff went to Yakima Neighborhood Health Services,

16  with abdominal pain, and Sarah An, ARNP stated that Plaintiff had been seen by

17  Dr. Jackson in August, and was prescribed esomeprazole, but had not picked up

18  her medicine from the August appointment.  Tr. 693.  Plaintiff told Nurse An that

19  the reason she had not picked up with medication was her mother's car had broken

20  down.  Tr. 692.  Nurse An gave her the option to take the medication in the clinic,

21  Plaintiff became upset and left the clinic.  *Id*.  Plaintiff argues that outbursts, such

ORDER ~ 14

1  as this are evidence of Plaintiff's psychological impairments which prove to be a

2  barrier to treatment.  ECF No. 10 at 7.  Plaintiff's argument is only one

3  interpretation of the evidence.  However, it is not this Court's role to second guess

4  the ALJ.  When there is evidence that supports both the ALJ's interpretation and

5  Plaintiff's interpretation of the evidence, the Court should not substitute its

6  assessment of the evidence for the ALJ's.  *Tackett*, 180 F.3d at 1098.

7      On September 25, 2015, Plaintiff was seen at the emergency room for

8  abdominal pain.  Tr. 545-51.  Plaintiff reported that she smokes marijuana daily

9  which usually helps but it had not helped on that day.  Tr. 546.  She was diagnosed

10  with abdominal pain and cannabinoid hyperemesis.  Tr. 549.  Plaintiff "was

11  advised that she should cut back or cease her usage until her symptoms improve

12  because she likely has cannabinoid hyperemesis."  Tr. 549.  Upon discharge,

13  Plaintiff was prescribed promethazine and instructed to follow up with her primary

14  doctor in the next two to three days.  Tr. 549.  Plaintiff testified at the hearing that

15  she was continuing to smoke marijuana daily.  Tr. 63.  Plaintiff argues that because

16  this cessation of marijuana was not prescribed by the emergency room provider, it

17  cannot be used to undermine her testimony.  ECF No. 10 at 8 *citing* S.S.R. 02-1p.

18  However, S.S.R. 02-1p was rescinded on May 20, 2019.  Furthermore, in light of

19  Plaintiff's failure to take her medication or consistently seek treatment, her refusal

20  to take the steps necessary to reduce her alleged pain further supports the ALJ's

21  rejection of her symptom statements.

Second, the ALJ found that Plaintiff "was being offered psychological treatment through her welfare benefits and she stopped attending shortly after engaging in February 2016." Tr. 22.  In the next paragraph, the ALJ states the following:

> In making this finding, the undersigned does not find the claimant's allegation that her state benefits did not cover mental health treatment to be convincing.  The claimant's lack of mental health treatment is entirely consistent with her lack of physical treatment for the past two years, and the claimant has not alleged that her benefits do not cover physical treatment.  The claimant's refusal to seek treatment is due to something other than the nature of her insurance coverage.

Tr. 22.

The record demonstrates that Plaintiff was receiving mental health treatment at Central Washington Comprehensive Mental Health in 2015, but treatment was discontinued in February of 2016 after failing to attend her treatment.  Tr. 644-46.  Following a crisis assessment in September of 2015, Plaintiff was to begin treatment again.  Tr. 643, 647-48.  On February 18, 2016, Plaintiff had an assessment, and Russell Anderson, LCSW stated that "Barbara has Coordinated Care insurance, under her Medicaid managed care plan, with whom Comprehensive does not have a contract for services.  Barbara is willing to switch her managed care plan to Molina Health Care, in order to access services for her depression, under a contracted provider with Comprehensive." Tr. 635.  Plaintiff was treated on March 7, 2016, Tr. 642, and March 29, 2016, Tr. 641.  On April 18, 2016, Jolene Nell, LCSW stated that "I called Barbara about her appointment that

was scheduled this morning.  She was frustrated that her appointments hadn't been moved to the afternoon, 'morning[s] just don't work for me.'" Tr. 640.  On May 25, 2016, Plaintiff reported to Jill Testerman, ARNP that she was receiving mental health treatment at Comprehensive Mental Health, but that she cannot go there any longer as her insurance had changed.  Tr. 476.  Considering, Plaintiff was given an opportunity to change her medical coverage to continue treatment, and she discontinued treatment because of scheduling problems, the ALJ's rejection of Plaintiff's claimed barrier of lack of insurance coverage is supported by substantial evidence.

Plaintiff argues that her medical insurance prevented her from completing mental health treatment is supported by Nurse Neil's January 5, 2017 statement that "[d]ue to her medical coverage (coordinated care) that she needs to keep her medical doctors, she will need to be seen by a mental health therapist/medication provider covered by [C]oordinated [C]are." ECF No. 10 at 7 *citing* Tr. 737. However, Nurse Neil's statement does not represent that Plaintiff's medical insurance prevented treatment, just that Nurse Neil's facility could not treat her. Therefore, this does not support Plaintiff's failure to seek treatment elsewhere.

Plaintiff argues that the ALJ failed to consider all of Plaintiff's reasons for either not seeking treatment or failing to follow treatment.  ECF No. 10 at 5.  She argues that she stopped seeking treatment because she had given up and felt that further treatment was futile.  *Id*.  She also argues that her mental health

impairments and limited insight was a barrier to seeking further treatment.  *Id*.

However, Plaintiff's failure to seek treatment is inconsistent with the pain she

alleged to endure with on a regular basis.  Tr. 277 (Plaintiff states it is too painful

for her to partake in any social activities); Tr. 283 ("The claimant wakes up every

morning with pain, nausea, she gets hungry but she can[']t eat.  Her back is also

hurting a lot."); Tr. 398 (Plaintiff "states that her abdominal and back pain [is] so

extreme that she cannot do much outside of the house.").  Therefore, the ALJ's

second reason for rejecting Plaintiff's symptom statements meets the specific, clear

and convincing standard.

The ALJ's third reason for rejecting Plaintiff's symptom statements, that she

had an entitlement mentality, is specific, clear and convincing.  A "well

documented motivation to obtain social security benefits" can support a finding

that a claimant's statements are unreliable.  *Matney on Behalf of Matney v.*

*Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).  Plaintiff has been on state

assistance for a number of years, Tr. 65-66, and her primary care provider noted

that she was aggressive about getting her Washington Department of Health and

Human Services (DSHS) paperwork completed, Tr. 400.  Plaintiff was so

aggressive that when the provider refused to state that Plaintiff was not capable of

any work activity, Plaintiff threatened suicide.  *Id*.  Therefore, the ALJ's third

reason is supported by substantial evidence and meets the specific, clear and

convincing standard.

The ALJ's fourth reason for rejecting Plaintiff's symptom statements, that she had a weak work history, is specific, clear and convincing.  An ALJ's finding that a claimant had limited work history and "ha[d] shown little propensity to work in her lifetime" can be a specific, clear, and convincing reasons for discounting the claimant's testimony.  *Thomas*, 278 F.3d at 959.  In 2006 Plaintiff earned $1,328.27, and in 2007 Plaintiff earned $2,390.35.  Tr. 223, 225.  She also earned $1,846.00 in the fourth quarter of 2017 and $674.00 I the first quarter of 2018.  Tr. 226.  Plaintiff argues that the ALJ cannot use Plaintiff's lack of work against her because her impairments were severe enough to cause her to stop working earlier that the application date and the ALJ limited the relevant period on a technicality.  ECF No. 10 at 11.

Plaintiff is correct, that her application date is not the beginning of the relevant period for determining what evidence to consider.  *See supra*.  However, the earliest onset date alleged is August 1, 2009 when Plaintiff was 21 years old.  Tr. 71.  Plaintiff did not attend college or vocational school.  Tr. 248.  Therefore, without additional explanation the ALJ reasonably concluded that Plaintiff chose not to work for reasons other than her impairments or seeking an education.  Therefore, this reason meets the specific, clear and convincing standard.

### E.    Medical Evidence

The ALJ's fifth reason for rejecting Plaintiff's symptom statements, that they were not entirely consistent with the medical evidence, is not specific, clear

and convincing.  Objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects," but it cannot serve as the only reason for rejecting a claimant's credibility.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  Here, the ALJ summarized the medical evidence in the record, but the ALJ failed to state specifically how any of the evidence discussed undermined Plaintiff's symptom statements.  Tr. 23-24.  The Ninth Circuit has found that "[g]eneral findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.  Therefore, this reason does not meet the specific, clear and convincing standard.  However, any error stemming from the ALJ's finding is harmless because she provided other legally sufficient reasons for rejecting Plaintiff's symptom statements.  *See Carmickle,* 533 F.3d at 1163.

## 2.    Medical Opinions

Plaintiff argues that the ALJ failed to properly weigh the opinions from Caryn Jackson, M.D., Donald Williams, M.D., and Jill Testerman, FNP.  ECF No. 10 at 15-21.

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).  Conversely, "[i]f a treating or examining doctor's opinion is contradicted by

another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830-31).

### A.    Caryn Jackson, M.D.

In October of 2016, Dr. Jackson completed a Work First Documentation Request form for DSHS. Tr. 672-74. She stated that Plaintiff had degenerative disc disease, a history of herniated disc at L4/5, and Depression/Posttraumatic Stress Disorder. Tr. 672. She stated that Plaintiff was limited to participating in work related activities for one to ten hours a week. *Id.* She specifically stated that Plaintiff had limitations in lifting, bending, carrying, holding one position for long periods of time (i.e. sitting/standing), and difficulty interacting with the public. *Id.* When asked about lifting and carrying limitations, Dr. Jackson stated that Plaintiff was limited to sedentary work, which was defined as "[a]ble to lift 10 pounds maximum and frequently lift or carry such articles as files and small tools. A sedentary job may require sitting, walking and standing for brief periods." Tr. 673. The ALJ gave the opinion little weight for two reasons: (1) there was no support for her opinion in her treatment notes and (2) the opinion was inconsistent with the record, including objective medical evidence. Tr. 25-26.

///

///

///

ORDER ~ 21

The ALJ's first reason for rejecting the opinion, that there was no support for it in Dr. Jackson's treatment notes, is specific and legitimate.[3]  The Ninth Circuit has held that a discrepancy between the provider's treatment notes and his opinion meets the clear and convincing standard.  *Bayliss*, 427 F.3d at 1216.  Here, Dr. Jackson's October 3, 2016 treatment report shows a normal physical exam other than tenderness in the right upper quadrant of the abdomen.  Tr. 682.  Plaintiff's PHQ-9 score indicated moderately severe depression.  Tr. 676.  Dr. Jackson also evaluated Plaintiff on August 16, 2016 with similarly normal results on exam except for some tenderness to palpation in the left upper quadrant of the abdomen.  Tr. 707.  Therefore, the ALJ's finding that Dr. Jackson's treatment notes did not support the level of impairment opined is supported by substantial evidence and meets the specific and legitimate standard.

The ALJ's second reason for rejecting the opinion, that it was inconsistent with the record, is specific and legitimate.  Inconsistency with the majority of objective evidence is a specific and legitimate reason for rejecting physician's opinions.  *Batson*, 359 F.3d at 1195; *see also Lester*, 81 F.3d at 831 (The ALJ may give weight to consulting opinions "only insofar as they are supported by evidence

---

[3]Dr. Jackson's testimony is contradicted in the record, Tr. 45, therefore, the ALJ was only required to provide specific and legitimate reasons for rejecting the opinion.

ORDER ~ 22

in the case record.").  Here, the medical imaging of Plaintiff's lumbar spine from July of 2014 showed a moderate paracentral protrusion of the L4-5 disc with moderate stenosis of the canal and mild degeneration and bulging of the L3-4 disc. Tr. 512, 678.  An X-Ray from March of 2016 showed degenerative disc disease and facet hypertrophy with grade I resrolisthesis of L3 on L4 possibly due to facet disease.  Tr. 678.  The ALJ accurately states that Plaintiff's "imaging of the lumbar spine showed at worst moderate impairments."  Tr. 26.  As for Plaintiff's abdominal pain, all imaging has been normal.  Tr. 510 (September 30, 2015 showing moderate amount of stool in the colon);  Tr. 440 (January 5, 2016 CT showing no acute abnormalities); Tr. 516 (November 11, 2015 EGD was normal with only mild gastritis); Tr. 708 (September 22, 2016 Hepatobiliary Scan showed low gallbladder ejection, which could be a false low result depending on medication).  Therefore, the objective evidence does not support the degree of limitation opined by Dr. Jackson, and the Court will not disturb the ALJ's treatment of the opinion.

### B.    Donald Williams, M.D.

On May 30, 2014, Dr. Williams performed a psychological evaluation of Plaintiff.  Tr. 378-82.  He diagnosed Plaintiff with borderline personality disorder, somatic symptom disorder, and unspecified depressive disorder, and a mental medical source statement detailing multiple marked limitations in areas of mental functioning.  Tr. 381.  Dr. Williams found Plaintiff's prognosis as guarded due to

her history of not following through and apparent lack of motivation. *Id*. The ALJ

found that this opinion was "of little evidentiary value for assessing the claimant's

functioning through the relevant period" because it was penned nearly two years

before the adjudicative period. Tr. 26-27.

The Ninth Circuit has found that medical opinions that predate the alleged

onset of disability are of limited relevance. *Carmickle*, 533 F.3d at 1165. Here,

the ALJ erred by limiting the relevant time period to the date of application and

forward and failing to consider the evidence from the date of Plaintiff's alleged

onset date and forward. *See supra*. However, even if the ALJ had correctly

viewed the evidence from the alleged date of onset and forward, this opinion

would still predate Plaintiff's November 14, 2014 alleged onset associated with

this application. Therefore, the ALJ's error is harmless as it applies to Dr.

Williams' opinion. *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when

"it is clear from the record that the . . . error was inconsequential to the ultimate

nondisability determination.").

**C.    Jill Testerman, ARNP**

On December 23, 2015, Nurse Testerman completed a Work First

Documentation Request form for DSHS. Tr. 391-93. She listed Plaintiff's

diagnoses as bipolar disorder, anxiety, chronic abdominal pain, and lumbar

degenerative disc disease. Tr. 391. Nurse Testerman limited Plaintiff to work

activities for eleven to twenty hours a week, stating that Plaintiff had limitations in

physical activity due to her back and abdominal pain and limitations in her ability to make and keep appointments due to bipolar disorder and anxiety that is not well controlled. *Id.* When asked about Plaintiff's lifting and carrying limitations, she stated that Plaintiff was limited to sedentary work. Tr. 392. The ALJ gave the opinion little weight for two reasons: (1) the opinion is not supported by Nurse Testerman's contemporaneous treatment notes; and (2) the opinion is not consistent with the remaining medical evidence of record. Tr. 26.

Under Federal Regulations, there are two kinds of medical providers: acceptable medical sources and non-acceptable medical sources. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 416.902(a). In this case, Nurse Practitioners, such as Nurse Testerman, are not considered acceptable medical sources. *Id.* When weighing opinions from non-acceptable medical sources, the ALJ is only required to provide germane reasons to reject such opinions. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The Ninth Circuit has criticized applying this lesser standard to nurse practitioners, stating "regulations provide an out-dated view that consider a nurse practitioner as an 'other source.'" *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (citing *Molina*, 674 F.3d at 1111). On March 27, 2017, the regulations were amended to reflect this view and included nurse practitioners in the list of providers considered acceptable medical sources. 20 C.F.R. § 416.902(a). However, this change only applies to applications filed with the Social Security Administration on or after

March 27, 2017.  20 C.F.R. § 416.902(a)(7).  Plaintiff's application was filed in 2016.  Therefore, this Court is required to apply the "out-dated view" and treat the opinion of Nurse Walker as an "other source."  *Popa*, 872 F.3d at 907.  An ALJ must give "germane" reasons to discount evidence from "other sources." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ's first reason for rejecting Nurse Testerman's opinion, that it is not supported by Nurse Testerman's contemporaneous treatment notes, meets the germane standard.  As discussed above, a discrepancy between the provider's treatment notes and her opinion meets the heightened clear and convincing standard.  *Bayliss*, 427 F.3d at 1216.  On September 30, 2015, Plaintiff had a normal physical evaluation except some tenderness in Plaintiff's neck and abdomen.  Tr. 603-04.  On January 13, 2016, Plaintiff had a normal physical exam with some tenderness in her low back and abdomen.  Tr. 471.  On May 25, 2016, Plaintiff's examination demonstrated some tenderness in her back, but the range of motion was intact.  Tr. 477.  Therefore, the ALJ's reason is supported by substantial evidence and meets the germane standard.

The ALJ's second reason for rejecting the opinion, that it was not consistent with the remaining medical evidence, is germane.  The ALJ summarized Plaintiff's medical evidence, Tr. 23-24, and found that it did not support Nurse Testerman's opinion, Tr. 26.  This is sufficient to meet the germane standard.

///

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment so long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  After review, the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 10, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, ECF No. 11, is
    **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

Dated: August 28, 2020.

Stanley A. Bastian
Chief United States District Judge

ORDER ~ 27